UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSH GREEN,                          :
     Plaintiff,                    :
                             :
v.                                   :        3:21cv269 (MPS)
                             :
WARDEN ZELYNETTE CARON, et al.,       :
     Defendants.                   :

**INITIAL REVIEW ORDER**

The plaintiff, Josh Green, a sentenced inmate[1] currently in the custody of the Connecticut Department of Correction ("DOC") at Garner Correctional Institution, filed this civil rights complaint *pro se*[2] under 42 U.S.C. § 1983 against the following DOC employees in their official and individual capacities:   Carl Robinson Correctional Institution ("Carl Robinson") Warden Zelynette Caron, Correction Officer Ouellette, Director of Security Antonio Santiago, Correction Officer Canales, Northern Correctional Institution ("Northern") Disciplinary Hearing Officer Lieutenant Grimaldi, Northern Intelligence Investigator Leone, Northern Administrative Segregation Hearing Officer R. Iccio, Northern Administrative Segregation Hearing Officer E. Tugie, Deputy Commissioner of Operations William Mulligan, Director of Classification and Population David Maiga. Compl. (ECF No. 1).[3]

---

[1] On December 12, 2005, Green was sentenced to twenty years of incarceration. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (the Court may "take judicial notice of relevant matters of public record."). http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=259965.

[2] Green has paid the fling fee.

[3] Green's complaint may also name the DOC as a defendant. However, any section 1983 claim against the DOC is not cognizable because the state, a state agency, or a division of a state agency is not a "person" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983).

1

Green alleges violation of his First, Fourteenth and Eighth Amendment rights under the United States Constitution. *Id.* at p. 54. He seeks damages and declaratory and injunctive relief. *Id.* at p. 56. He also requests a security lien to be placed upon the assets and/or properties of each defendant. *Id.* at p. 57, ¶ 60.

## I.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A, the court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-102 (2d Cir. 2010).

A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* at 556.   Notwithstanding the rule of liberal interpretation of a pro se complaint, a pro se complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

## II.    ALLEGATIONS

On April 1, 2020, Carl Robinson inmates had become concerned about the lack of cleaning supplies, dirty showers, strewn garbage, and ant infestations in the dorm. Compl. at ¶ 14. At dinner, the inmates refused their meals but remained peaceful. *Id.* at ¶ 17. Inmate Douglas had asked everyone to refrain from eating dinner. *Id.* at ¶ 22.

Later, Douglas voiced his concerns to Warden Caron, Officer Canales, and Lieutenant Ouellette about unsanitary conditions in Dorm 3-B where Green resided. *Id.* at ¶ 18.

On April 2, 2020 at 10:45 AM, Lieutenant Lee entered the dorm and thanked the inmates for the peaceful protest. *Id.* at ¶ 23. She asked the inmates to write down their needs on a piece of paper. *Id.* Later, two inmates provided the list to the correction staff. *Id.* at ¶ 24. On April 3, 2020, the two inmates who had provided the list were taken to segregation. *Id.* at ¶ 25.

On April 4, 2020 at 11:30 AM, while Green was watching television, Green was confronted by correctional staff with dogs and mace and Lieutenant Ouellete with camera telling him to get up slowly and put his hands behind his back. *Id.* at ¶¶ 27-28. Green complied. *Id.* at ¶ 28. They escorted him to another hallway where he was placed in handcuff and then walked to the segregation entrance. *Id.* at ¶ 29. He was placed in leg irons and had his hands reshackled without explanations or concern about the tightness of the shackles. *Id.* at ¶ 30. Green was then placed inside of a van without any explanation about where he was heading. *Id.* After Green realized that the van took him to Northern, he started to panic. *Id.* at ¶ 31. Thereafter, Green was brought to a holding cell where he was stripped of his clothing while he was still wearing his handcuffs. *Id.* at ¶ 32. His jumper was later put back on and he was escorted to a Level-6 Block of administrative segregation in a Level-5 jail. *Id.* at ¶ 33.

Green was left alone in his cell with no explanation about why he was brought to segregation at Northern. *Id.* at ¶ 34. Later, someone next door informed him that he was "with Death Row." *Id.* at ¶ 35. Green started to hyperventilate and experienced anxiety. *Id.* at ¶ 36. At Northern, Green was subjected to twenty-three hours a day of in-cell confinement and twenty-four hours a day in-cell on the weekend. *Id.* at ¶ 37. He has been traumatized by the solitary confinement. *Id.*

He was found guilty at his Disciplinary Report hearing even though DHO Grimaldi stated that it could not be proven that Green had "started" any hunger strike. *Id.* at ¶ 38. Specifically, the Disciplinary Summary Process Report stated: "It cannot be proven from the Investigation or Incident Report Inmate Green organized any hunger strike. With this said, Inmate Green does admit to participating in the Hunger strike and feeding the rest of the dormitory with his own food to support the hunger strike. Whether intentional or not, Inmate Green is found Guilty. *Id.* at p, 24. Green was subjected to fifteen days loss of phone privileges, 90 days loss of commissary, and 15 days loss of Risk Reduction Earn Credit ("RREC"). Green complains that there was no investigation and that correctional staff had indicated that there were two witnesses but those witnesses did not appear at his hearing. Compl. at ¶ 38. Green alleges that he is Protestant and his religion denies him from denying food to anybody who is starving. *Id.* at ¶ 21.

Inmate Douglas got a disciplinary report for organizing the hunger strike. *Id.* at ¶ 39. Green's disciplinary investigation report stated that Green had helped Douglas get the other inmates to refrain from eating their dinner. *Id.* Green asserts that he does not know Douglas. *Id.*

4

When Green went to the Administrative Segregation hearing, he informed Hearing Officer Tugie that he was non-violent and a recovering addict, but the hearing officer still found that he was guilty for purposes of administrative segregation. *Id.* at ¶ 40, p. 29.

Due to the environment at Northern, Green's anxiety, depression, and Post-Traumatic Stress Syndrome have worsened. *Id.* at ¶ 41. He had previously been taking computer classes, preparing for his G.E.D., and participating in fitness classes. *Id.* at ¶ 41. He was keeping out of trouble. *Id.*

Since his mental health deteriorated, he has been moved to Garner, a mental health jail. *Id.* at ¶ 42. At Garner, his conditions have not improved; he is concerned about his safety and security due to seeing correctional staff assault an inmate who was suffering from mental health problems. *Id.* at ¶¶ 43-44. Green is experiencing depression and worry due to his witnessing that assault. *Id.* at ¶ 45. Green reported the assault by the correctional staff member to his unit manager, and Green's safety is at risk because the correctional staff member works in his unit. *Id.* at ¶ 46.

## III.    DISCUSSION

Green alleges violation of his Fourteenth Amendment rights based on the issuance of the disciplinary report, his transfer to Northern, and placement in the Administrative Segregation Program. *Id.* at p. 54, ¶ 48-49. He asserts that he has sustained retaliation in violation of his First Amendment rights due to his complaints about his unsanitary living conditions. *Id.* at ¶ 50. His allegations also raise Eighth Amendment concerns about the use of excessive force and his conditions of confinement. *Id.* at 49-50.

"It is well settled in this Circuit that personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation omitted). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). To "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

Green's complaint contains no factual allegations indicating the direct personal involvement of Warden Caron, Lieutenant Canales, DHO Leone, Investigator Iccio, Director Maiga, or Deputy Commissioner Mulligan in any constitutional violation. Accordingly, Green cannot may not proceed against these defendants in their individual capacities for damages under 42 U.S.C. § 1983.

### A.    Fourteenth Amendment Procedural Due Process

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541 (1985). Procedural due process analysis "proceeds in two steps: [a court] first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so ... whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke,* 562 U.S. 216, 219 (2011) (per curiam).

6

Liberty interests may arise from either the Due Process Clause itself or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). In *Sandin v. Conner,* 515 U.S. 472 (1995), the Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* at 483-84. Green has a protected liberty interest only if the state created such an interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship. *See Tellier v. Fields,* 280 F.3d 69, 80-81 (2d Cir. 2000).

In the prison context, a prisoner must show that he was subjected to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. 472, 484 (1995) (prisoner subjected to a disciplinary term of thirty days confinement in restrictive housing did not sustain a deprivation of a liberty interest for purposes of due process).[4] The court must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Davis v. Barrett,* 576 F.3d 129, 133–34 (2d Cir. 2009); *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir. 2004). "The inquiry into the severity of confinement assesses whether differences in conditions between a restrictive housing status and the general population or other restrictive statuses constitute a significant hardship." *Taylor v. Rodriguez,* 238 F.3d 188, 195 (2d Cir. 2001).

"[T]he duration of [segregated] confinement is a distinct factor bearing on atypicality and must be carefully considered." *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir. 2000). There is no "bright line rule that a certain period of [segregated] confinement automatically fails to implicate due process rights." *Palmer,* 364 F.3d at 64. Generally, a long period of segregation—such as

---

[4] *Sandin* applies to circumstances involving both administrative and disciplinary segregation. *Arce v. Walker,* 139 F.3d 329, 335 (2d Cir. 1998).

more than 305 days—"is sufficiently atypical to trigger due process protections." *Ellerbe v.*
*Jasion*, 2015 WL 1064739, at *5 (D. Conn. Mar. 11, 2015). "Where the plaintiff was confined
for an intermediate duration—between 101 and 305 days—development of a detailed record of
the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364
F.3d at 64–65 (cleaned up). "[R]estrictive confinements of less than 101 days do not generally
raise a liberty interest warranting due process protection, and thus require proof of conditions
more onerous than usual." *Davis,* 576 F.3d at 133; *Kalwasinski v. Morse*, 201 F.3d 103, 107–08
(2d Cir. 1999) (discussing factors relevant to deciding if confinement in SHU constitutes an
atypical hardship).

For an administrative proceeding, the inmate is entitled only to "some notice of the
charges against him and an opportunity to present his views [either orally or in writing] to the
prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).
These procedural steps "must occur within a reasonable time following an inmate's transfer."
*Taylor v. Comm'r of New York City Dep't of Corr.*, 317 F. App'x 80, 82 (2d Cir.
2009) (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 & n.8 (1983). In *Wilkinson v. Austin*, 545
U.S. 209, 229 (2005), the Supreme Court applied the standard set forth in *Hewitt* to a due process
claim asserted by inmates who had been classified for indefinite placement in a high security
state prison for safety and security, rather than disciplinary reasons.

By contrast, for a disciplinary hearing, an inmate is entitled to the procedural protections
of "advance written notice of the charges against him; a hearing affording him a reasonable
opportunity to call witnesses and present documentary evidence; a fair and impartial hearing
officer; and a written statement of the disposition, including the evidence relied upon and the

reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Further, "due process requires that there be some evidence to support the findings made in [a] disciplinary hearing." *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992) (internal quotation marks omitted). This standard, however, "is extremely tolerant" and can be satisfied based on "*any* evidence in the record" supportive of the disciplinary ruling. *Girard v. Chuttey*, 826 F. App'x. 41, 46 (2d Cir. 2020) (summary order) (citing *Sira*, 380 F.3d at 69).

      1.   <u>Administrative Detention</u>

      Green's allegations reflect that he was confined in administrative detention at Northern for at least forty days from April 3, 2020 to May 7, 2020 (the date he was found guilty on the disciplinary charges). Compl. at ¶¶ 28-32, p. 24. Thus, Green's allegations raise at least an inference of a liberty interest based on his isolated confinement (although of short duration) in administrative detention as he has alleged that he was kept alone in his cell for twenty-three or even twenty-four hours a day. *Id.* at ¶¶ 34, 37.

      Thus, the court must next consider whether Green has plausibly alleged that he was denied any process he was due for his initial placement in administrative detention.

      Green's complaint indicates that he was placed in the administrative detention on April 3, 2020 and received notice of the disciplinary charges against him on April 5, 2020. Compl. at ¶ 28-32, p. 21. However, the complaint suggests that Green did not have an opportunity to present his views within a reasonable time as required under *Hewitt*. Thus, the court will permit his due process claim for damages to proceed beyond initial review for further development against Lieutenant Ouellette, who approved the disciplinary report on April 5, 202 and is the only defendant who is alleged to have involvement with his detention prior to his disciplinary hearing.

2.    <u>Disciplinary Hearing</u>

To the extent Green brings a procedural due process challenge arising from his disciplinary hearing, his claim concerns "mixed sanctions, "*i.e.*, "sanctions that affect both (a) the duration of his imprisonment and (b) the conditions of his confinement." *Peralta v. Vasquez*, 467 F.3d 98, 103 (2d Cir. 2006); *see* Compl. at 25. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a Section 1983 action seeking money damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless that "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus...." *Heck,* 512 U.S. at 487 (internal citation omitted). In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court made clear that *Heck*'s favorable termination rule applies to challenges made under Section 1983 to procedures used in disciplinary proceedings that deprived a prisoner of RREC. *See Peralta*, 467 F.3d at 103. In *Peralta*, the Second Circuit held that "a prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, *but ... he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement." Id.* (emphasis in original). Thus, Green's procedural due process claim relevant to his mixed sanctions (which include loss of his RREC) is barred by *Heck* as he has not filed a notice that he forgoes a challenge to his RREC sanction. The court will, however, afford Green the opportunity to file a notice advising the court in writing, within thirty days of this ruling's filing date, whether he waives for all time all claims in this action relating to disciplinary

10

sanctions affecting the duration of his confinement (i.e., the forfeiture of the 15 days of RREC) in order to proceed with his claims challenging the disciplinary finding. Failure to file this notice will be deemed to constitute his refusal to waive those claims and will thus result in the dismissal of his Fourteenth Amendment due process claim.

3.    Administrative Segregation Program

Green complains about Hearing Officer Tugie's determination that he should be placed in Administrative Segregation. Although the duration of his Administrative Segregation is not entirely clear from the allegations of the complaint, the court assumes that Green's allegations raise a liberty interest based on a segregated confinement of long duration and extreme isolation. Compl. at ¶¶ 40-41.

Under both the *Wolff* and *Hewitt* standards, the decisions to place an inmate in administrative or punitive segregation must be based on "some evidence." *Brown v. Semple*, No. 3:16CV376(MPS), 2018 WL 4308564, at *12 (D. Conn. Sept. 10, 2018) (*citing Superintendent v. Hill,* 472 U.S. 445, 454(1985) (procedural due process requires that decision in connection with prison disciplinary hearing be "supported by some evidence in the record"). Construed broadly, Green's allegations suggest that Green's Administrative Segregation placement decision was not supported by at least "some evidence." *Id.* Accordingly, the court will permit this due process claim to proceed against Hearing Officer Tugie.

**B.    First Amendment Retaliation**

To prevail on a First Amendment retaliation claim, a plaintiff must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse

action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019)(internal quotation marks and citation omitted).

Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance. *See Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015); *Booth v. Comm'r of Corr.*, No. 19-CV-100 (MPS), 2019 WL 919580, at *5 (D. Conn. Feb. 25, 2019). Some district courts within the Second Circuit have determined that verbal or oral complaints regarding the conduct of prison officials or conditions of confinement may constitute protected speech in the context of a First Amendment retaliation claim, although this issue remains unsettled. *See Cosby v. McDonald*, No. 3:20-CV-432 (MPS), 2020 WL 5026550, at *6 (D. Conn. Aug. 25, 2020); *Dehaney v. Chagnon*, No. 3:17-CV-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017). This court has held that "[a] prisoner has a right under the First Amendment to complain about prison conditions, especially conditions that the prisoner believes endanger his health and safety." *Gómez v. Department of Corrections*, No. 3:20-CV-00958 (JAM), 2020 WL 6526108, at *3 (D. Conn. Nov. 4, 2020) (permitting plaintiff's claim that he was retaliated against for complaining about prison staff's failure to use personal protective equipment to safeguard against COVID-19 transmission). "An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon*, 938 F.3d at 40 (quoting *Davis*, 320 F.3d at 353).

In order to allege causation, the inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)). "Some of the facts often used to determine

retaliatory motive may include (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing motivation." *Ramos v. Semple*, No. 3:18-CV-1459 (VAB), 2019 WL 2422875, at *2 (D. Conn. June 10, 2019).

Courts treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (citation omitted). Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (internal quotations and citation omitted).

Green alleges that shortly after a list about inmate needs was provided to correctional staff, he was confronted by correctional officers with a dog and mace and told to put his hands behind his back by Lieutenant Ouellette; placed in cuffs and leg irons; transferred to a high-security prison where he was strip searched and placed in administrative detention; was issued a disciplinary report approved by Lieutenant Ouellette; was subsequently found by Lieutenant Grimaldi guilty of supporting the hunger strike; and was later placed in Administrative Segregation according to the decision of Hearing Officer Tugie. Compl. at ¶¶ 24, 28-34, 38, 40.

For purposes of initial review, the court concludes that Green has sufficiently stated a plausible claim of First Amendment retaliation due to the protected conduct of participating in inmate complaints about unsanitary conditions of confinement. The court will permit Green's First Amendment retaliation claim to proceed against Lieutenant Ouellette, Lieutenant Grimaldi,

and Elizabeth Tugie in their individual capacities as Green has alleged that they were all personally involved in the asserted acts of retaliation taken against him.

C.     **First Amendment Free Exercise**

Green alleges that he was found guilty because he was acting according to his Protestant religion when he provided food to other inmates during the hunger strike.

The Free Exercise Clause requires that government officials respect, and avoid interference with, the religious beliefs and practices of the people. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). In *Salahuddin*, the Second Circuit held that, to state a plausible free exercise claim, "[t]he prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." 467 F.3d at 274–75. "A substantial burden exists where the [government] 'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Forde v. Zickefoose*, 612 F. Supp. 2d 171, 177 (D. Conn. 2009) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)). The court should consider "whether [the prisoner] sincerely holds a particular belief and whether the belief is religious in nature" without "evaluat[ing] the objective reasonableness of the prisoner's belief." *Ford v. McGinnis*, 352 F.3d 582, 590 (2d Cir. 2003) (internal quotation omitted). In *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014), the Second Circuit suggested that the "substantial burden test" may be obsolete in light of the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990). It remains unresolved in this circuit whether a prisoner must show that the disputed conduct substantially burdened his sincerely held religious beliefs, and district courts within this circuit continue to apply the "substantial burden test" when addressing free exercise claims. *Caves v. Payne*, No. 3:20-CV-15 (KAD), 2020 WL 1676916, at *7 (April 4, 2020) (citing cases and

14

applying "substantial burden test" to inmate's free exercise claim).

Here, the complaint provides that his Protestant faith "prohibits" him from denying food to anyone who is starving. Compl. at ¶ 21. However, his complaint indicates that he gave food to individuals on the day that inmates participated by choice from refraining from eating the meals provided by DOC as part of a hunger strike. *See id.* at ¶¶ 16, 22, p. 23. Such factual allegations do not suggest that the defendants placed a substantial burden on his exercise of his religious belief by finding him guilty of supporting the hunger strike. Accordingly, the court concludes that Green has not alleged a plausible violation of the Free Exercise Clause.

### D.    Eighth Amendment

Green's complaint raises Eighth Amendment claims about excessive force, unsanitary conditions, and lack of mental health care during his confinement. These claims are governed by the Eighth rather than the Fourteenth Amendment because Green is a sentenced prisoner rather than a pretrial detainee. *See Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Abernathy v. Comm'r of Correction*, No. 3:20-CV-628 (VAB), 2020 WL 5097566, at *2 (D. Conn. Aug. 28, 2020) (dismissing Fourteenth Amendment claim).

### 1.    Excessive Force

The Eighth Amendment protects prisoners from "cruel and unusual punishments." U.S. CONST. amend. VIII. "Although not every malevolent touch by a prison guard gives rise to a federal cause of action, inmates have the right to be free from the unnecessary and wanton infliction of pain at the hands of prison officials." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (internal quotations and citations omitted). In order to state an Eighth Amendment claim for the use of such excessive force, an inmate must allege two elements: (1) a sufficiently serious

use of force (the objective element) (2) that has been inflicted for malicious or sadistic reasons rather than in a good-faith effort to maintain or restore discipline (the subjective element). *See Harris v. Miller*, 818 F.3d 49, 63-64 (2d Cir. 2016) (*per curiam*). Officers are liable not only when they use excessive force themselves, but also when they fail to intervene to stop the excessive use of force by another officer when in a position to observe the conduct and with time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019).

Here, Green's allegations suggest that the officers use high level of force involving dogs, mace and tight cuffing without a good faith effort to maintain discipline. *See Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) ("[T]he malicious use of force to cause harm constitutes an 'Eighth Amendment violation *per se* ... whether or not significant injury is evident.'"). The court will permit this claim to proceed for damages against Lieutenant Ouellette, who is indicated as being present during the use of excessive force without taking steps to intervene to prevent the alleged excessive force. Compl. at ¶ 28.

2.    Conditions of Confinement

Although the Constitution does not require "comfortable" prison conditions, the Eight Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care," and that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted). To state a claim for deliberate indifference to health or safety under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element.

To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of "the minimal civilized measure of life's necessities" or a "substantial risk of serious harm." *Id.* at 834 (internal quotation marks and citations omitted). To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent—that is, the officials must have known that the inmate faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of merely negligent conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin,* 467 F.3d at 280. When evaluating a claim for deliberate indifference to inmate safety, a court considers "the facts and circumstances of which the official was aware at the time he acted or failed to act." *Hartry v. Cty. of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

Under the Eighth Amendment, inmates have a right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene. *See Walker v. Schult,* 717 F.3d 119, 127 (2d Cir. 2013) (citing cases for the proposition that "the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation"). Unsanitary conditions have satisfied the objective element where "the area in front of a prisoner's cell is filled with human feces, urine, and sewage water, …   a prisoner's cell is fetid and reeking from the stench of the bodily waste from the previous occupants, … a prisoner's cell floor has urine and feces splattered on the floor." *McFadden v. Noeth*, 827 F. App'x 20, 2020 WL 5415469, at *6 (2d Cir. 2020) (summary order) (citations and quotations omitted). The Second

17

Circuit has rejected "any bright-line durational requirement for a viable unsanitary-conditions claim[,]" and instructed that a claim based on exposure to unsanitary conditions "depends on both the duration and severity of the exposure." *See Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) (reversing district court's dismissal for failure to state an Eighth Amendment conditions of confinement claim where inmate plaintiff alleged that while kept naked in a strip cell, he was exposed, at a minimum, to seven days of human waste).

Here, Green's allegations indicate that inmates could not clean their cells despite the presence of unsanitary conditions. Compl. at ¶ 15. However, Green has not alleged that the conditions deprived him of a basic human need or exposed him to a substantial risk of serious harm due to the severity or duration of the unsanitary conditions so as state a plausible Eighth Amendment claim. *See Govan v. Campbell*, 289 F. Supp. 2d 289, 296 (N.D.N.Y. 2003) ("Govan asserts conditions which 'could have' caused him harm but he fails to assert how he was actually harmed. It may well be that the shower stalls had rust bubbles, that wild birds were permitted to fly within the cells, and that there were cockroach problems, but these conditions do not rise to the level of a constitutional violation). Accordingly, such Eighth Amendment claim must be dismissed as not plausible.

However, Green's allegations also indicate that he was subjected to isolating conditions where he remained in his cell for twenty-three or sometimes twenty-four hours at a time that have resulted in his mental health deterioration. Compl. at ¶¶ 37, 40, 41. Although isolating conditions may raise an objectively serious harm, Green has not alleged facts that any defendant had awareness about this condition and its effects on his mental health at Northern. Accordingly, Green has not plausibly alleged an Eighth Amendment claim based on his isolating conditions.

3.    Mental Health

As noted, Green alleges that his mental health deteriorated due to his conditions in segregation. Compl. at ¶ 37, 41.

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners," whether "manifested by prison doctors in response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–105 (1976) (cleaned up). However, "not every lapse in medical care is a constitutional wrong." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). To succeed on a medical deliberate indifference claim, an inmate must also demonstrate both an objective and subjective element.

To meet the objective element, an inmate must allege that the conditions to which he was subjected "pose an unreasonable risk of serious damage to his health" and that the alleged deprivation of adequate medical care was "sufficiently serious." *Walker*, 717 F.3d at 125; *Salahuddin*, 467 F.3d at 279. To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent—that is, subjective recklessness. *See Salahuddin*, 467 F.3d at 280. To be subjectively reckless, the defendant prison official must have known of and disregarded "an excessive risk" to plaintiff's health or safety. *See id.*; *Farmer*, 511 U.S. at 834, 837. To know of and disregard an excessive risk to the plaintiff's health or safety, the defendant must be actually "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837; *see also Salahuddin*, 467 F.3d at 281 (noting that the "charged official must be subjectively aware that his conduct creates" a substantial risk of serious harm).

To the extent that Green asserts an Eighth Amendment claim based on deliberate indifference to his mental health, Green has not alleged any facts to raise an inference that any named defendant was personally involved in the failure to provide him with mental health care during his confinement in segregation. Accordingly, Green has not plausibly asserted an Eighth Amendment mental health deliberate indifference claim against any defendant in this action.

### E.     Confinement at Garner

Green has alleged that he feared for his safety and suffered from depression and worry while confined at Garner. However, he has not alleged that any of the named defendants had any personal involvement with his conditions of confinement at Garner. Accordingly, the court will dismiss any claims arising from his allegations about his conditions of Garner confinement.

### F.     Official Capacity Claims

Green requests a declaratory judgment and injunctive orders. Compl. at p. 56

As a preliminary matter, any claims for money damages against the defendants, who are state employees, in their official capacities are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617(2d Cir. 2007).

With respect to his claims for injunctive relief,"[i]n the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y.1997) (citing *Farmer*, 511 U.S. at 846-47) (other citations omitted). Federal courts can order prospective relief "in any civil action with respect to prison conditions," provided it "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a). Injunctive relief afforded by a court must be narrowly tailored or proportional to the scope of the violation and extend no further than necessary to remedy the violation. *Brown v. Plata*, 563 U.S. 493, 531 (2011). Thus, the court should reject "remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution." *Id.*

Green seeks the court to order Defendants Leone, Grimaldi, Tugie and Maiga to create a more comprehensive panel to oversee the disciplinary process and grievance procedure and to provide a panel of impartial individuals to oversee Administrative Segregation placement. Compl. at ¶ 53. Although Green has not alleged a plausible Fourteenth Amendment claim based on his disciplinary hearing, he appears to be still placed in Administrative Segregation. Accordingly, for initial pleading purposes, the Court will permit his request for injunctive relief concerning his Administrative Segregation placement to proceed beyond initial review against Deputy Commissioner Mulligan and Director Maiga in their official capacities as they may plausibly have an ability to grant such relief. *See Ex parte Young*, 209 U.S. at 157 (defendant official must have some connection with enforcement of allegedly unconstitutional act).

21

Green also seeks a court order for Warden Caron to participate in training, be placed on probation, and be demoted. Compl. at ¶ 54. This request is not plausible as it is not clear how this request seeks relief for an ongoing constitutional violation. Furthermore, Green is no longer housed at Carl Robinson, and "[a] prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility." *Thompson v. Carter,* 284 F.3d 411, 415 (2d Cir. 2002).

Green requests a declaration that defendants have violated his constitutional rights. Declaratory relief operates in a prospective manner to allow parties to resolve claims before either side suffers significant harm. *See In re Combustion Equip. Assoc. Inc*., 838 F.2d 35, 37 (2d Cir. 1988). However, a declaratory judgment concerns prospective relief that is only available if a plaintiff can show "a sufficient likelihood" of being wronged again "in a similar way." *Macavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012). Furthermore, if Plaintiff were to prevail on his Fourteenth Amendment claim, the Court necessarily would determine that his constitutional rights had been violated. Thus, a separate award of declaratory relief is unnecessary. Accordingly, the request for a declaratory judgment is dismissed as not plausible. *See* 28 U.S.C. § 1915A(b)(1).

**G.     Security Lien**

Green requests "a security lien placed upon the assets and/or properties of each [of the] defendants to ensure compensatory and punitive relief" pursuant to Connecticut General Statutes § 52-278(a)(b). Compl. at ¶ 60. The court construes Green's complaint as requesting a prejudgment remedy. However, such a remedy is available only if a plaintiff shows probable cause to conclude that judgment will be rendered in his favor. *See Roberts v. TriPlanet Partners,*

*LLC*, 950 F. Supp. 2d 418, 420 (D. Conn. 2013) (quoting Conn. Gen. Stat. § 52-278d(a)).

Although Green has alleged certain claims that give rise to plausible grounds for relief, his

complaint's allegations fall short of establishing probable cause to conclude that his claims will

succeed. Accordingly, the court will deny without prejudice his request for a security lien absent

a more substantial showing of his likelihood of success.

## ORDERS

The Court enters the following orders:

(1) The case shall proceed on Green's individual capacity claims based on First

Amendment retaliation against Lieutenant Ouellette, Disciplinary Hearing Officer Grimaldi, and

Hearing Officer Tugie; Fourteenth Amendment violation against Lieutenant Ouellette and

Hearing Officer Tugie; and Eighth Amendment excessive force against Lieutenant Ouellette.

Green's Fourteenth Amendment official capacity claim may proceed against Deputy

Commissioner Mulligan and Director Maiga. All other federal claims are DISMISSED without

prejudice.

Green may file, **within 30 of this Order**, an amended complaint if he believes that he can

correct the deficiencies with his claims identified in this order. The court advises Green that all

defendants must be named in the case caption and any amended complaint will completely

replace the prior complaint in this action as no portion of any prior complaints shall be

incorporated into an amended complaint by reference.

If Green seeks to bring a Fourteenth Amendment due process claim challenging the

mixed sanctions imposed as a result of the guilty finding on Disciplinary Report, he must advise

the court in writing, within thirty days of this ruling's filing date, whether he waives for all time

23

all claims in this action relating to disciplinary sanctions affecting the duration of his confinement (i.e., the forfeiture of RREC) in order to proceed with his claims challenging the disciplinary finding. The court advises Green that failure to file such a statement within the required time will be deemed to constitute his refusal to waive those claims and will thus result in the dismissal of his Fourteenth Amendment due process claim.

(2)   Because Green has paid the filing fee in this case, and he has not been granted *in forma pauperis* status, he is responsible for serving the complaint on Lieutenant Ouellette, Disciplinary Hearing Officer Grimaldi, and Hearing Officer Tugie in their individual capacities and on District Administrator Mulligan and Director Maiga in their official capacities within 60 days of the date of this order pursuant to Rule 4, Fed. R. Civ. P. If Green has questions about service of the complaint, he may contact the Inmate Legal Aid Program ("ILAP"). Failure to effect service within the time specified may result in the dismissal of this action as to a defendant who has not been served.

The Clerk is directed to send Green instructions for service of the complaint on the defendants in their individual and **official** capacities, together with one copy of the complaint, one copy of this order, four blank Notice of Lawsuit forms, four blank Waiver of Service of Summons forms, and one summons form completed and issued by the Clerk for defendants District Administrator Mulligan and Director Maiga in their **official** capacities using the address of the Office of the Attorney General, 165 Capitol Avenue, Hartford, Connecticut 06160.

(3) Green shall effect service of the complaint on defendants in their individual capacities by mailing a Notice of Lawsuit form, a Waiver of Service of Summons form, a copy of the complaint, and a copy of this order to each defendant. **Green shall file a notice with the Clerk**

**indicating the date on which he mailed the Notice of Lawsuit and Waiver of Services of Summons forms to the defendants in their individual capacities. Green shall also file the signed Waivers of Service of Summons forms that he receives from the defendants in their individual capacities with the Clerk.**

(4) Green shall also effect service of the complaint on defendants in their **official** capacities by serving a copy of the summons, complaint, and this order on the defendants District Administrator and Director Maiga using the address of the Office of the Attorney General, 165 Capitol Avenue, Hartford, Connecticut 06160. **He shall also file a return of service documenting when defendants Mulligan and Maiga were served with a copy of the complaint in their official capacities.**

(5) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(6) The defendants shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendant chooses to file an answer, defendant shall admit or deny the allegations and respond to the cognizable claims recited above. The defendant may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be

found at http://ctd.uscourts.gov/administrative-standing-orders.

(9) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(11)   If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(12) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 1st day of June, 2021, at Hartford, Connecticut.

26