UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSH GREEN,
    Plaintiff,

v.                                       3:21cv269 (MPS)

WARDEN ZELYNETTE CARON, et al.,
    Defendants.

## ORDER

The plaintiff, Josh Green, a sentenced inmate[1] currently in the custody of the Connecticut Department of Correction ("DOC") at Garner Correctional Institution, filed this civil rights complaint *pro se*[2] under 42 U.S.C. § 1983 against the following DOC employees in their official and individual capacities: Carl Robinson Correctional Institution ("Carl Robinson") Warden Zelynette Caron, Correction Officer Ouellette, Director of Security Antonio Santiago, Correction Officer Canales, Northern Correctional Institution ("Northern") Disciplinary Hearing Officer Lieutenant Grimaldi, Northern Intelligence Investigator Leone, Northern Administrative Segregation Hearing Officer R. Iccio, Northern Administrative Segregation Hearing Officer E. Tugie, Deputy Commissioner of Operations William Mulligan, Director of Classification and Population David Maiga. Compl. (ECF No. 1).

After reviewing the complaint under 28 U.S.C. § 1915A(b), the Court permitted Green's case to proceed on his individual capacity claims against Lieutenant Ouellette, Disciplinary Hearing Officer Grimaldi, and Hearing Officer Tugie based on First Amendment retaliation; on his individual capacity claims against Lieutenant Ouellette and Hearing Officer Tugie based on

---

[1] On December 12, 2005, Green was sentenced to twenty years of incarceration. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (the Court may "take judicial notice of relevant matters of public record."). http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=259965.

[2] Green has paid the filing fee.

Fourteenth Amendment violation; and on his individual capacity claims against Lieutenant Ouellette based on Eighth Amendment excessive force. *See* IRO (ECF No. 15 at 23). The court also permitted Green's Fourteenth Amendment official capacity claim to proceed against Deputy Commissioner Mulligan and Director Maiga. *Id.* However, the Court did not review Green's Fourteenth Amendment procedural due process claims arising from his guilty finding on a disciplinary report. *See id.* at 10-11, 24. Pursuant to the Second Circuit's decision in *Peralta v. Vasquez*, 467 F.3d 98, 100 (2d Cir. 2006), the Court instructed Green to file a written notice indicating whether he waived *for all time* all Fourteenth Amendment claims in this action arising from the disciplinary sanctions imposed after the guilty finding on the disciplinary charge that affected the duration of his confinement (*i.e.*, the forfeiture of his RREC). *Id.* at 25.

Green has filed a notice indicating that he waives for all time all claims against all defendants in this action relating to disciplinary sanctions affecting the duration of his confinement (*i.e.*, the forfeiture of his RREC). *See* (ECF No. 15). Accordingly, the court will now consider whether Green has stated a plausible Fourteenth Amendment procedural due process claim arising from the guilty finding on the disciplinary report. The court assumes familiarity with the standard of review under 28 U.S.C. § 1915A and facts alleged in the complaint. The court includes herein only those facts and legal standard relevant to this Fourteenth Amendment claim.

A. Facts

On April 4, 2020 Green was brought to a cell with no explanation about why he was brought to segregation at Northern. Compl. at ¶ 34. Later, someone next door informed him that he was "with Death Row." *Id.* at ¶ 35. Green started to hyperventilate and experienced anxiety.

*Id.* at ¶ 36. At Northern, Green was subjected to twenty-three hours a day of in-cell confinement and twenty-four hours a day in-cell on the weekend. *Id.* at ¶ 37. He has been traumatized by the solitary confinement. *Id.*

A disciplinary report dated April 5, 2020 issued by Lieutenant Ouelette charged Green with the offense of "Impeding Order" as it was "discovered that inmate Green was orchestrating a hunger strike" in his unit. Compl. at p. 21. The disciplinary report indicates Green was served with the disciplinary report on April 5, 2020 at 12:50 PM. *Id.*

At his May 7, 2020 hearing, Green pleaded not guilty. *Id*. at p. 25. However, Disciplinary Hearing Officer Grimaldi found him guilty but also noted in the Disciplinary Process Summary Report that the "investigation or Incident Report" did not prove that Green had "organized" any hunger strike, although Green had admitted to "participating" in the strike. *Id.* at p. 24. Specifically, the Disciplinary Summary Process Report stated: "It cannot be proven from the Investigation or Incident Report Inmate Green organized any hunger strike. With this said, Inmate Green does admit to participating in the Hunger strike and feeding the rest of the dormitory with his own food to support the hunger strike. Whether intentional or not, Inmate Green is found Guilty." *Id.* at p. 24. In addition to loss of RREC, Green was subjected to fifteen days of punitive segregation (served from April 4 through April 18, 2020) and 90 days loss of commissary following his punitive segregation.[3] *Id.* at p. 25. Green complains that there was no investigation and that correctional staff had indicated that there were two witnesses, but those witnesses did not appear at his hearing. *Id.* at ¶ 38.

---

[3] The court notes that Green's punitive sanctions were imposed retroactively after he had already served the fifteen-day period in segregation. *See* Compl. at p. 24-25 (Disciplinary Process Summary dated 5/7/2020; service to Green on May 11, 2020).

The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). As Green has forgone any challenge to the loss of RREC, the court considers only the punitive segregation and loss of commissary in its consideration of whether Green has a plausible liberty interest at stake. If there is a liberty interest, the court will consider whether Green received the proper process due to him.

In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement in a prison, a prisoner cannot show a cognizable deprivation of "liberty" unless he can show that he was subject to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As the Second Circuit has explained, courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Davis v. Barrett*, 576 F.3d 129, 133–34 (2d Cir. 2009); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Id.* at 64 (quoting *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)).

In *Sandin,* the Supreme Court held that a disciplinary thirty-day period of segregated confinement for a prisoner (with an indeterminate sentence of thirty years to life) did not

constitute a liberty interest deprivation in violation of the Fourteenth Amendment's Due Process Clause. 515 U.S. at 484-487. By contrast, "a very long period of segregation—longer than 305 days—is sufficiently atypical to trigger due process protections." *Ellerbe v. Jason*, No. 12 Civ. 580 (MPS), 2015 WL 1064739, at *5 (D. Conn. Mar. 11, 2015) (citing *Palmer,* 364 F.3d at 65). However, "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer,* 364 F.3d at 64–65 (quotation marks omitted). Accordingly, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009); *Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (describing the conditions of a prisoner's placement in administrative segregation in a special housing unit as "doubtless unpleasant and somewhat more severe than those of general population," but affirming that "the degree of incremental harshness, endured for 101 days, is not an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' ") (quoting *Sandin*, 515 U.S. at 484); *see also Kalwasinski v. Morse*, 201 F.3d 103,107-08 (2d Cir. 1999) (discussing factors relevant to deciding if confinement in SHU constitutes an atypical hardship).

Although Second Circuit precedent holds that a brief confinement in restrictive housing does not alone constitute an atypical and significant hardship, the Court will consider Green's punitive segregation of fifteen days sufficient to support a liberty interest to state a plausible Fourteenth Amendment procedural due process claim in light of his allegations that he suffered

5

harsh conditions of confinement during that period. This is without prejudice to Defendants' filing a motion to dismiss this claim.

Thus, the Court considers whether Green received the proper process due to him. When evaluating the processes used in prison disciplinary and administrative decision making, courts must be "mindful of the context," and remember "the deference we owe prison officials in carrying out their daily tasks." *Proctor v. LeClaire*, 846 F.3d 597, 608–09 (2d Cir. 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979)). The level of procedural protection that the Constitution requires varies depending on the type of confinement. *See Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). For a disciplinary confinement, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)). The notice must permit a "reasonable person" to "understand what conduct is at issue so that he may identify relevant evidence and present a defense." *Elder v. McCarthy*, 967 F.3d 113, 124 *(quoting Sira*, 380 F.3d at 70). Further, "due process requires that there be some evidence to support the findings made in the disciplinary hearing." *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)) (cleaned up).

The record attached to the complaint shows that Green was not found guilty of "orchestrating a hunger strike" as set forth in the disciplinary report but rather only of "participating" in the strike. Compl. at p. 21, 24. Thus, Green's complaint is sufficient for

6

purposes of initial review to raise a plausible claim that he did not receive notice of the charges against him so that he could prepare a defense as due process requires. In addition, Green's allegations suggest there may not have been reliable evidence in support of his guilty finding. The court will permit Green's procedural due process claim based on his disciplinary report dated April 5, 2020 to proceed beyond initial review against DHO Grimaldi and Lieutenant Ouelette, who are alleged to have plausible involvement with this claim.

**Accordingly, the Court enters the following Order:**

Pursuant to the Initial Review Order (ECF No. 10) and this Order, this case shall proceed on Green's individual capacity claims based on First Amendment retaliation against Lieutenant Ouellette, Disciplinary Hearing Officer Grimaldi, and Hearing Officer Tugie; Fourteenth Amendment violations against Lieutenant Ouellette, Disciplinary Hearing Officer Grimaldi, and Hearing Officer Tugie; and Eighth Amendment excessive force against Lieutenant Ouellette; Green's Fourteenth Amendment official capacity claim may proceed against Deputy Commissioner Mulligan and Director Maiga. All other federal claims are DISMISSED without prejudice.

The court has already sent the initial review order with the service instructions to Green and afforded Green until September 28, 2021 to effect service on the defendants. (ECF Nos. 10, 14).

The court requests the clerk to send this order to Green, the DOC Office of Legal Affairs and to the Office of the Attorney General. Green is instructed to send the defendants a copy of this Order by September 28, 2021.

The court reminds Green that if he changes his address at any time during the litigation of

7

this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. If the plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. The plaintiff should also inform the attorney for the defendants of his new address.

SO ORDERED at Hartford, Connecticut this 1st day of July 2021.

                                               /s/
                                    Michael P. Shea
                                    United States District Judge